**Donna HYLIN, Individually and as Administrator of the Estate of Donald Hylin, Deceased, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 81–2931.**

United States Court of Appeals, Seventh Circuit.

Feb. 13, 1985.

Rehearing and Rehearing En Banc Denied May 17, 1985.

Louis G. Davidson, Chicago, Ill., Peter F. Ferracuti, Ottawa, Ill., for Plaintiff-Appellant.

James P. Klapps, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

On Remand from the Supreme Court of the United States

Before BAUER, WOOD, and ESCHBACH, Circuit Judges.

PER CURIAM.

Pursuant to an order of the Supreme Court, —— U.S. ——, 105 S.Ct. 65, 83 L.Ed.2d 16 (1984), this case is before us for reconsideration in light of *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (*"Varig Airlines"*). The facts and procedural history of this Federal Tort Claims Act (FTCA) action were detailed in the panel opinion, *Hylin v. United States*, 715 F.2d 1206 (7th Cir.1983), and will be briefly summarized here only to the extent they bear upon the issue before us: whether the discretionary function exception to the waiver of sovereign immunity embodied in the FTCA, as interpreted in *Varig Airlines*, bars plaintiff's claim that the negligent acts and omissions of federal mine inspectors were the proximate cause of her husband's death.

Plaintiff's husband was electrocuted when he came in contact with a defective electrical junction box located on the east wall of a passageway in the mine. A conveyor belt ran along the length of the passageway. Approximately six months before Donald Hylin's death, Mine Enforcement and Safety Administration (MESA) inspectors had cited the mine operator for a violation of a mandatory safety standard which required that all conveyors either have guards (*i.e.*, handrails) or be equipped with emergency stop devices. Although they observed the dangerous condition of the junction box, they did not inspect it. Because of the infeasibility of equipping the conveyor with a stop device, the operator chose to abate the violation by erecting a handrail along the conveyor. Erection of the handrail narrowed the east passageway along the conveyor, reducing the distance

between the defective junction box and the handrail to fourteen inches. Mine workers also now were forced to use the east passageway rather than the customarily-traversed west passageway. In the course of traversing this newly-necessitated route, plaintiff's husband was electrocuted.

Plaintiff sued the United States under the FTCA, alleging she was entitled to recovery under two theories of Illinois tort law: (1) the negligent failure of the MESA inspectors to inspect and cite for correction the defective junction box caused her husband's death; and (2) the enforcement of the mandatory safety standard on conveyors had either created or enhanced the risk of injury from the defective junction box.

This court, with Judge Bauer dissenting, found viable plaintiff's second theory of recovery and rejected the government's contention that the FTCA's discretionary function exception, 28 U.S.C. § 2680(a),[1] barred plaintiff's claim. We determined that the discretionary function exception erects no immunological barrier to governmental liability for conduct that consists of "merely implementing and enforcing mandatory regulations." *Hylin*, 715 F.2d at 1213.[2] Accordingly, we held the exception inapplicable to the MESA inspectors' issuance of the order to decedent's employer to abate the violation of the mandatory safety standard on conveyors, compliance with which negligently enhanced the risk of harm from the defective electrical junction box.

Aided by the parties' Circuit Rule 19 statements, we now must reconsider this holding in light of the Supreme Court's recent general discussion of the parameters of the discretionary function exception,

---

1. Under 28 U.S.C. § 2680(a), the United States may not be held liable under the FTCA for:

   Any claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

2. In so determining we relied in part upon *United Scottish Insurance Co. v. United States*, 692 F.2d 1209, 1212 (9th Cir.1982), in which the court of appeals held that FAA enforcement of mandatory safety requirements for aircraft was not a discretionary function. The Supreme Court granted *certiorari*, consolidated the case with *Varig Airlines*, and reversed the Ninth Circuit's decision. *United States v. United Scottish Insurance Co.*, 467 U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

gleaning guidance from the Court's application of the exception to the specifics of *Varig Airlines.*

### I.

Our starting point is the general principle expounded in *Varig Airlines:* the discretionary function exception "was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Varig Airlines,* 104 S.Ct. at 2765. At issue in *Varig Airlines* was the Federal Aviation Administration's procedure for certificating aircraft for use in commercial aviation. Plaintiffs sought to impose liability upon the government for the FAA's allegedly negligent failure to inspect certain elements of aircraft type design before certificating the aircraft. Under the Act, the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator; the FAA's duty consists solely of policing compliance with FAA safety regulations, a responsibility it has decided, in its discretion, to fulfill through implementation of a "spot check" program. The manufacturer is required to develop the plans and specifications and perform the inspections and tests necessary to establish that an aircraft design comports with FAA regulations. "Spot checks" of the manufacturer's work to ascertain that the design complies with minimum airworthiness requirements are then conducted.

Encompassed in plaintiffs' contention that the FAA was negligent in failing to inspect certain elements of aircraft design were challenges to the FAA's decision to implement the "spot check" system of compliance review and the application of that system to the aircraft involved. The Court found both challenges barred by the discretionary function exception.

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.... Here, the FAA has determined that a program of

"spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources.

\*   \*   \*   \*   \*   \*

> It follows that the acts of FAA employees in executing the "spot-check" program in accordance with agency directives are protected by the discretionary function exception as well.... The FAA employees who conducted compliance reviews of the aircraft involved in this case were specifically empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources.

*Id.* at 2768–69.

### II.

As in *Varig Airlines,* Hylin challenges the negligent failure of MESA inspectors to discover noncompliance with a mandatory safety regulation. She further challenges the enforcement of a mandatory safety regulation, an action which negligently enhanced the risk of injury from the uncited violation. Hylin erroneously relies on MESA inspectors' specific negligent acts and omissions as the touchstone of the discretionary function analysis. Whether the government was in fact negligent is irrelevant to the analysis. *Varig Airlines* teaches that we must examine the nature of the challenged governmental activity. *Id.* at 2765 (the appropriate inquiry is "whether the discretionary function exception immunizes from tort liability the FAA certification *process* involved in this case"). For the purpose of this case, we glean from *Varig Airlines* the following: If the regulatory inspection and enforcement activities of an agency require its employees to exercise discretion in performing their duties, the discretionary function exception bars tort claims against the government based upon those performances. We believe that,

in light of *Varig Airlines*, Hylin's FTCA action is barred by the exception.

Admittedly, the regulatory scheme at issue in *Varig Airlines* is distinguishable from the regulatory scheme at issue here with respect to the amount of discretion vested in the agency entrusted with the duty of carrying out the congressional mandate. For example, unlike the FAA, under the Federal Metal and Nonmetallic Mine Safety Act of 1966, 30 U.S.C. § 721 *et seq.*,[3] MESA may not choose in its discretion to conduct only "spot checks" of mines which have had good safety records in the past. On the contrary, MESA is required by statute to conduct periodic inspections of mines subject to the Act. 30 U.S.C. § 723. In this sense, MESA is not entrusted with discretion to determine "the extent to which it will supervise the safety procedures" of mine operators. *Varig Airlines*, 104 S.Ct. at 2768. We may presume for the purpose of this analysis that MESA is required to conduct a full inspection of the premises.

■ But MESA inspectors are required to exercise discretion in fulfilling their inspection and enforcement duties. An inspector who determines that a mine operator has failed to comply with a mandatory standard can issue either a withdrawal order for violations he deems have created a danger "which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated," or a notice of violation for violations which have not created such a danger. 30 U.S.C. § 727(a), (b). The determination whether an "imminent danger" exists is but the first of several discretionary decisions entrusted to MESA inspectors under the Act. If, as in *Hylin*, the inspector determines that the violation has not created an "imminent danger," he is required to issue a notice of violation. Although the issuance of the citation is "nearly automatic," *Hylin*, 715 F.2d at 1214, the inspector is cloaked with

the discretion to fix a reasonable time for abatement and, in some cases, to choose between two means by which the mine operator can abate the violation. We now hold that, under *Varig Airlines*, the enforcement activities of MESA are protected by the discretionary function exception.

This case is remanded to the district court with directions to dismiss the complaint for lack of subject matter jurisdiction. Each party shall bear its own costs.

---

3. The Act was repealed in 1977 and replaced by the Federal Mine Safety and Health Act of 1977, Pub.L. No. 95–164, 91 Stat. 1290, codified at 30 U.S.C. § 801 *et seq.* The 1977 Act became effective only after the accident that gave rise to this suit.