Rickie G. WALLACE, individually, and as co-personal representative of the estate of Jack D. Wallace, and Kaye L. Fabritz, as co-personal representative of the estate of Jack D. Wallace, and in behalf of the heirs of Jack D. Wallace, who are Rickie G. Wallace, Terry Wallace, James Lynn Wallace and Lisa Michelle Mahaffey, Plaintiffs,

v.

The UNITED STATES of America, United States DEPARTMENT OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION, Defendant.

No. C89–0037–B.

United States District Court,
D. Wyoming.

Aug. 2, 1989.

Michael Newman, Honaker & Hampton, Rock Springs, Wyo., for plaintiffs.

Carol Statkus, Asst. U.S. Atty., Cheyenne, Wyo., Heidi E. Weckwert, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER ON MOTION TO DISMISS

BRIMMER, Chief Judge.

This matter comes before the Court on defendant's motion to dismiss. A hearing on the motion was held on June 1, 1989, before the United States Magistrate, sitting by designation of the Chief Judge of the United States District Court for the District of Wyoming, pursuant to 28 U.S. C.A. § 636(b)(1)(B). The Magistrate issued proposed findings and recommendations on June 7, 1989. The Court, having reviewed the pleadings, the Magistrate's findings and recommendations, and responses thereto; and being fully advised in the premises, now FINDS and ORDERS as follows:

Jack Wallace was killed when a trona mine teletram lurched, crushing him against a mine rib. Plaintiffs represent Wallace's estate and heirs, and contend mine operator Texasgulf modified the teletram, making it unsafe. Plaintiffs brought this action against the United States and two of its agencies under the Federal Tort Claims Act (FTCA). They allege defendant negligently allowed the mine operator to use the modified teletram without reinspection and recertification—an alleged violation of defendant's rules and regulations. They also allege defendant failed to require Texasgulf to submit an adequate training and retraining plan for its miners.

Defendant moved to dismiss the lawsuit for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). After considering the pleadings and arguments of counsel, the Magistrate recommended that the defendant's motion to dismiss be granted with prejudice. The Magistrate determined that the plaintiffs' suit was barred by the discretionary function exception to the FTCA, 28 U.S.C.A. § 2680(a) (1965). The Magistrate further found that plaintiffs had no cause of action against the Mine Safety Health Administration (MSHA) for failing to require Texasgulf to submit an adequate training plan for its miners. As the Magistrate noted, "[r]esponsibility for miner training ... is placed solely upon the mine operator pursuant [to federal statute]." Proposed Findings and Recommendations at ¶ 9 (June 7, 1989).

On June 20, 1989, plaintiffs sent the Magistrate a letter objecting to the proposed findings and recommendations. This letter was not filed with the Court. On July 3, 1989, the defendant properly filed with this Court, pursuant to Fed.R.Civ.P. 72(b), a response to plaintiffs' letter of objection. Defendant noted that plaintiffs did not properly file objections as required by Fed.R.Civ.P. 72(b), and urged this Court to adopt the Magistrate's recommendation.

### Discussion

■ Fed.R.Civ.P. 72(b) provides that

Within 10 days after being served with a copy of the recommended disposition, a party may serve and *file* specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition *to which specific written objection has been made in accordance with this rule.*

(Emphasis added.) Plaintiffs did not timely file an objection in accordance with this Rule, so the Court need not make a de novo determination concerning any portion of the Magistrate's proposed findings and recommendations.

■ Even if plaintiffs' objections had been properly filed, however, they would not compel a decision contrary to that recommended by the Magistrate. Plaintiffs contend that more discovery is required to show MSHA's negligence in performing safety inspections at the Texasgulf mine. However, the Federal Mine Safety and Health Act of 1977 (FMSHA) and 30 C.F.R. Parts 32 and 36 are the only MSHA or other governmental provisions which are relevant to the Court's determination on the applicability of the discretionary function exception. Discovery is unnecessary because all statutes, rules and regulations relevant to the manner in which a mine must be inspected, are readily accessible to the plaintiffs.

■ The FMSHA requires MSHA to inspect the Nation's mines four times a year. 30 U.S.C.A. § 813(a) (1986). The manner of inspection, however, is not prescribed. The Magistrate noted by analogy that under *Russell v. United States,* 763 F.2d 786, 787 (10th Cir.1985), coal mine inspections under § 813(a) fall within the discretionary function exception to the FTCA. The Court agrees with his conclusion that "under § 813(a), there is no principled distinction between the inspection of coal and noncoal mines. Section 813(a) simply refers to 'coal and other mines.' Therefore, the inspection of noncoal mines, such as that in question, falls within the discretionary function exception." Proposed Findings and Recommendations, at ¶ 7.

Indeed, Congress recognized that MSHA could not be required to discover the existence of every unsafe condition in every mine in the United States during its inspections. This is borne out by 30 U.S.C. §§ 813(f) and (g), which provide that miners and mine operators accompany the MSHA inspector to aid in the inspection, and afford miners the opportunity to request immediate inspection when they believe a standard is being violated. There are no regulations requiring MSHA to police the mining industry to the extent of discovering and preventing every mine operator from using every piece of equipment which may violate MSHA regulations. Such a requirement would exceed the capabilities of the agency and throw into question the feasibility of the regulatory scheme.

The Magistrate's findings contain certain clerical errors, which are hereby corrected. Paragraph 5, page six of the findings mistakenly refers to 30 C.F.R. Part 34 rather than Part 36. Also, the FMSHA provides that authorized representatives of the Secretary of Labor, rather than of the Secretary of Health and Human Services, shall make inspections of mines at least four times a year. In the FMSHA, clauses (3) and (4) of 30 U.S.C. § 813(a) are carried out by the "Secretary." This is defined in FMSHA as the Secretary of Labor, not the Secretary of Health and Human Services,

as ¶ 3 of the Magistrate's findings erroneously states. It is therefore

ORDERED that the Proposed Findings and Recommendations of Magistrate William C. Beaman, dated June 7, 1989, be, and the same hereby are, adopted, with the above-noted corrections to two clerical errors. Defendant's motion to dismiss is granted with prejudice.

## PROPOSED FINDINGS AND RECOMMENDATIONS

WILLIAM C. BEAMAN, United States Magistrate.

This matter came before the Court on defendant's motion to dismiss. A hearing on the motion was held on June 1, 1989, before the United States Magistrate, sitting by designation of the Chief Judge of the United States District Court for the District of Wyoming, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate, having considered the pleadings and motions, having heard the arguments of counsel, and being fully advised in the premises, now proposes the following findings and recommendations for the disposition of the motion by a judge of the Court:

### Background

Jack Wallace was killed when a trona mine teletram lurched, crushing him against a mine rib. Plaintiffs, who represent Wallace's estate and heirs, contend mine operator Texasgulf Chemicals Company modified the teletram, making it unsafe. Plaintiffs brought this action against the United States and two of its agencies under the Federal Tort Claims Act (FICA). They allege defendant negligently allowed the mine operator to use the modified teletram without reinspection and recertification—an alleged violation of defendant's rules and regulations. They also allege defendant failed to require Texasgulf to submit an adequate training and retraining plan for its miners.

Defendant moves to dismiss the lawsuit for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

### Findings

1. Under Fed.R.Civ.P. 12(b)(1), a federal claim should be dismissed for lack of subject matter jurisdiction only if it clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or is clearly frivolous or wholly insubstantial. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). However, where a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action, assuming the challenge is not immaterial, frivolous or insubstantial under *Bell*, is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir.1981).

Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987) (citations omitted). All well-pleaded facts, as opposed to conclusory allegations, must be taken as true. *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976). All reasonable inferences must be indulged in favor of the plaintiff, and the pleadings must be liberally construed. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Dismissal pursuant to Rule 12(b)(6) is a dismissal on the pleadings unless "matters outside the pleadings are presented to and not excluded by the court ..." in which case "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986) (citing Fed.R.Civ.P. 12(b)).

In the present case defendant's jurisdictional challenge is a challenge to the existence of a federal cause of action. Because no matters outside the pleadings were presented or considered, the proper course of action is to treat the motion as one for dismissal under Fed.R.Civ.P. 12(b)(6), rather than for summary judgment.

2. Defendant contends plaintiffs' suit is barred by the discretionary function excep-

tion to the FTCA, 28 U.S.C.A. § 2680(a) (1965). That exception provides that the government is not liable for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* A discretionary function is an activity which involves 1) an element of judgment or choice for the acting employee, *and* 2) the permissible exercise of policy judgment. *Berkovitz v. United States*, 486 U.S. 531, ——--——, 108 S.Ct. 1954, 1958–61, 100 L.Ed.2d 531, 540–43 (1988). The exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.,* 486 U.S. at ——--——, 108 S.Ct. at 1958–59, at 540–41.

3. Plaintiffs argue the discretionary function exception does not apply because defendant violated a statutory duty to inspect the trona mine where Wallace worked. Plaintiffs note that the Federal Mine Safety and Health Act of 1977 (FMSHA) provides that authorized representatives of the Secretary of Health, Education, and Welfare "shall make inspections of each underground coal or other mine in its entirety at least four times a year." 30 U.S.C.A. § 813(a) (1986). The Mine Safety and Health Administration (MSHA) has been authorized by the Secretary to make these inspections.

4. Plaintiffs' complaint does not allege that defendant failed to inspect the trona mine. Rather, it states that "Defendant's inspectors, in the course of their quarterly inspections of the mine and its equipment from 1983 to the time of the accident, permitted Texasgulf to use noncertified impermissible equipment in the mine in violation of Defendant's own rules and regulations." Complaint at ¶ 26. Neither that sentence, nor the succeeding sentence discussing teletram inspections, expressly or impliedly allege defendant failed to inspect the mine.

5. Assuming, *arguendo*, defendant did fail to inspect the mine, plaintiffs have cited no statute, regulation, rule, or policy

which requires MSHA, on any of the four annual inspections, to inspect and either certify as safe or prohibit the use of, equipment such as the teletram. Plaintiff made a general reference to 30 C.F.R. parts 32 and 34, but these sections do not mandate the manner in which an inspection is to be performed. Part 32 concerns the process and standards for approving the design and manufacture of mobile diesel-powered equipment for noncoal mines. Part 36 contains similar provisions regarding certain transportation equipment in gassy noncoal mines and tunnels. Neither part mandates that MSHA inspect and prohibit the use of equipment violating the regulations, during any of its § 813(a) inspections.

6. Texasgulf allegedly sought approval of the teletram modification in 1982, and following various exchanges of correspondence, MSHA did not approve the modification, and did not re-certify the teletram. Despite this, Texasgulf continued using the teletram.

7. Because MSHA's inspection and enforcement activities require its employees to exercise discretion in performing their duties, coal mine inspections under 30 U.S.C.A. § 813(a) fall within the discretionary function exception to the FTCA. *Russell v. United States*, 763 F.2d 786, 787 (10th Cir. 1985). Under § 813(a), there is no principled distinction between the inspection of coal and noncoal mines. Section 813(a) simply refers to "coal and other˙ mines." Therefore, the inspection of noncoal mines, such as that in question, similarly falls within the discretionary function exception.

8. Plaintiffs also contend MSHA failed to require Texasgulf to submit an adequate training and retraining plan for its underground miners. Responsibility for miner training, however, is placed solely upon the mine operator pursuant to the FMSHA, 30 U.S.C.A. § 825 (1986).

9. Plaintiffs conceded at the hearing that under the FTCA, 28 U.S.C. § 1346(b), only the United States—not its agencies— can be named as a defendant to an action such as the present.

## Recommendations

For the foregoing reasons, it is the recommendation of the Magistrate that the United States District Court for the District of Wyoming grant defendant's motion to dismiss, with prejudice.

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1), within ten days after being served with a copy of these proposed findings and recommendations, they may serve and file written objections, as provided by rules of court.

Dated this 7th day of June, 1989.